Case 1:08-cv-00442-LPS Document 20 Filed 04/30/10 Page 1 of 16 PageID #: 101

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL TYRONE SMITH, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 08-442-JJF |
| | : |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social | : |
| Security, | : |
| | : |
| Defendant. | : |
| | : |
| | : |

Steven L. Butler, Esquire of LINARDUCCI & BUTLER, New Castle,
Delaware.
Of Counsel: David F. Chermol, Esquire of CHERMOL & FISHMAN, LLC,
Philadelphia, Pennsylvania

Attorneys for Plaintiff.

David C. Weiss, Esquire, United States Attorney, and Dina White
Griffin, Esquire, Special Assistant United States Attorney, of
the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.
Of Counsel: Eric P. Kressman, Esquire, Acting Regional Chief
Counsel and Amanda R. Reinitz, Esquire, Assistant Regional
Counsel, of the SOCIAL SECURITY ADMINISTRATION, Philadelphia,
Pennsylvania.

Attorneys for Defendant.

**MEMORANDUM OPINION**

April $3\theta$, 2010
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is an appeal pursuant to 42 U.S.C. § 405(g) filed by Plaintiff, Michael Tyrone Smith, seeking review of the final administrative decision of the Commissioner of the Social Security Administration (the "Administration") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433. Plaintiff has filed a Motion For Summary Judgment (D.I. 14) requesting the Court to reverse the decision of the Commissioner and direct an award of benefits, or alternatively, to remand this matter to the Administration for further development and analysis. In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 16) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Cross-Motion For Summary Judgment will be denied, and Plaintiff's Motion For Summary Judgment will be granted. The decision of the Commissioner dated November 1, 2007, will be reversed and this matter remanded for further findings and/or proceedings.

## BACKGROUND

### I. Procedural Background

Plaintiff filed his application for DIB on June 20, 2005, alleging disability since January 20, 2004, due to alleged physical and mental impairments. (Tr. 15-17, 59-61, 77, 82,

1

138). At the hearing, Plaintiff amended his onset date to October 15, 2004. (Tr. 13, 58). Plaintiff's application was denied initially and upon reconsideration. (Tr. 35-45). Thereafter, Plaintiff requested a hearing before an administrative law judge (the "A.L.J."). (Tr. 13, 368-414). On November 1, 2007, the A.L.J. issued a decision denying Plaintiff's application for DIB. (Tr. 13-27). Following the unfavorable decision, Plaintiff timely appealed to the Appeals Council. On June 5, 2008, the Appeals Council denied Plaintiff's request for review (Tr. 4-6), and the A.L.J.'s decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the A.L.J.'s decision denying his claim for DIB. In response to the Complaint, Defendant filed an Answer (D.I. 10) and the Transcript (D.I. 12) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief in support of the Motion. In response, Defendant filed a Cross-Motion For Summary Judgment and a Combined Opening Brief in support of his Cross-Motion and Opposition to Plaintiff's Motion requesting the Court to affirm the A.L.J.'s decision. Plaintiff has filed a Reply Brief.

Accordingly, the Court will proceed to address the merits of Plaintiff's claims.

## II. Factual Background

### A. Plaintiff's Medical History, Condition and Treatment

At the time of the A.L.J.'s decision, Plaintiff was 39 years old and defined as a younger individual under 20 C.F.R. §§ 404.1563(c), 416.963. Plaintiff has a tenth grade education and past work experience as a fast-food worker, farmhand, claim packer, chicken packer, trash collector, lawn-cutter, and loader (Tr. 407).

Plaintiff's detailed medical history is contained in the record; however, the Court will provide a brief summary of the pertinent evidence. Plaintiff suffers from several conditions, including tarsal tunnel syndrome, polyneuropathy due to diabetes mellitus, a right knee medial meniscus tear, obesity, depression, hypertension, headaches, dizziness, and nausea. Plaintiff also has a learning disorder and functions in the borderline range of intelligence with an IQ of 77. (Tr. 276-277).

In February 2005, Plaintiff underwent surgery for a torn medial meniscus of the right knee. In March 2005, Francis C. Drury, M.D. examined Plaintiff and noted that despite Plaintiff's complaints of pain, his knee "actually looks quite good." (Tr. 180). Dr. Drury also noted that Plaintiff could complete his course of physical therapy which was scheduled to end within two

weeks of the date of his examination and that would "free him up for all activities." (Tr. 180). In June 2005, Dr. Drury stated that Plaintiff's "knee examines very well for the reported level of pain that he is having." Because Dr. Drury had scoped Plaintiff's knee, he indicated that he "would be very slow to change anything unless it has collapsed on that medial side." (Tr. 179). In January 2006, Plaintiff again reported to Dr. Drury for knee pain. Dr. Drury ordered a new MRI, which showed "something on the posterior horn," but this did not match the location of Plaintiff's pain. (Tr. 305). Dr. Drury noted no effusion in Plaintiff's knee, no joint line tenderness, no warmth, no erythema, and no medial or lateral collateral ligament laxity. (Tr. 305). Dr. Drury opined that there was nothing further he could do to treat Plaintiff and referred him to Thomas B. Volatile, M.D., for a second opinion.

On examination, Dr. Volatile noted no effusion and that Plaintiff had full range of motion in his knee and right hip. (Tr. 348). Dr. Volatile noted normal x-rays and MRIs. Dr. Volatile "could not explain where the knee pain is coming from" and recommended Plaintiff for a third opinion or that he try to live with his discomfort. (Tr. 348-349).

Plaintiff sought a third opinion with Stephen F. Manifold, M.D., D.S. in July 2006. Dr. Manifold recommended that Plaintiff wear a knee sleeve for weight-bearing activities, resume physical

4

therapy, and begin a home exercise program. (Tr. 329-330).
Consistent with this recommendation, Plaintiff went for a
physical therapy evaluation in July 2006 by Philip Barkens, P.T.
Mr. Barkens opined that Plaintiff's rehabilitation potential was
"good." (Tr. 332). A plan was developed for him to follow, but
Plaintiff was non-compliant and was discharged in August 2006 for
failure to attend physical therapy.

Plaintiff followed-up with Dr. Manifold in September 2006,
and reported that he was "feeling much better." He denied any
significant pain, swelling, locking up or giving way.
Plaintiff's examination was essentially normal, and Dr. Manifold
found that Plaintiff's knee pain had improved. Dr. Manifold
recommended continued quadricep strengthening. (Tr. 330).

Plaintiff also treated with Mark M. Menendez, D.P.M. for
podiatry problems. In March 2007, Dr. Menendez prescribed
physical therapy for Plaintiff (Tr. 356). Plaintiff reported to
Dr. Menendez that therapy did not help, and in April 2007, he
discontinued therapy alleging a lack of insurance. (Tr. 362).
In September 2007, Dr. Menendez opined that Plaintiff had no
evidence of tarsal tunnel syndrome, weakness in his range of
motion in the lesser digits, and an antalgic gait. (Tr. 355).
He opined that plaintiff could stand or walk for four hours at a
time and for no more than four hours in an eight hour work day.
He further opined that Plaintiff could sit for four hours at a

time in an eight hour day. Dr. Menendez also reported that Plaintiff would need eight fifteen minute breaks during the work day where he would need to rest his head on a high back chair, and that he would need to lie down for one or two hours in a work day. Dr. Menendez reported that Plaintiff suffers from moderate pain levels, that his postural activities were limited, and opined that he could not perform sedentary work. (Tr. 352-354).

A state agency examiner assessed Plaintiff's residual functional capacity ("RFC") in November 2005, and determined that Plaintiff's maximum RFC was for sedentary work. This assessment was affirmed in April 2006. (Tr. 266-277, 297-304).

Plaintiff underwent a mental health examination in April 2006, with Joseph B. Keyes, Ph.D. Dr. Keyes found Plaintiff's intellect to be in the mid to upper borderline intellectual functioning range, his memory in the average/normal range, his perceptual organization in the low average range, and his verbal comprehension and processing speed in the lower borderline range. No memory disorder was noted. Dr. Keyes found Plaintiff's affect and his social and interpersonal skills to be appropriate and adequate. He noted that Plaintiff was "capable of performing self care skills and light activities of daily living." (Tr. 278). Dr. Keyes diagnosed Plaintiff with a mild learning disorder and assessed a global assessment of functioning ("GAF")

6

of 65-70.[1]

Carlene Tucker-Okine, Ph.D. also completed a psychiatric review technique and mental RFC evaluation for the State Agency in April 2006. She opined that Plaintiff was either not significantly limited or only moderately limited in the areas evaluated. Specifically, Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions, in the ability to maintain attention and concentration for extended periods of time, to perform activities within a regular schedule, maintain attendance and complete a normal workday and work week without interruptions from psychologically based symptoms.

B.    The A.L.J.'s Decision

At the hearing, Plaintiff was represented by counsel, and Plaintiff testified. The A.L.J. consulted a vocational expert and asked her to consider a hypothetical person with Plaintiff's age and background, suffering from insulin dependent diabetes, a right knee deficiency due to a cartilage tender tear, obesity, and mild depression treated only by a primary care doctor. The A.L.J. also added that this person takes medication and has mild

---

[1]    A GAF of 61 to 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. Diagnostic and Statistical Manual of Mental Disorders 32 (4th 3d. 1994).

to moderate pain and discomfort and neuropathy in the hands and

feet.   The A.L.J. further added that this person

> needs simple, routine, unskilled jobs due to his
> education, pain an discomfort, and depression, low
> stress, concentration, memory . . . can lift ten pounds
> on occassion, lesser amounts frequently, stand on his
> feet for 20 to 30 minutes at a time, and can sit for
> that amount of time without any problems on a
> continuous basis during an eight-hour day, five days a
> week, jobs that have little interaction with the
> public, coworkers, or supervisors, and have to avoid
> heights and hazardous machinery due to his dizziness
> occasionally . . . and no prolonged climbing,
> balancing, stooping, or temperature or humidity
> extremes, and jobs not requiring repetitive use of his
> hands, and mildly limited as to, or minimally, allow
> him occasionally to minimally raise his feet off of
> weight bearing on a minimal distance on occassion
> during an eight-hour day.

(Tr. 409).  The vocational expert responded that the "world of

sedentary work would be severely restricted" by the hypothetical

proffered by the A.L.J., and that the only position she would

offer was that of security monitor, with 400 jobs locally and

22,000 jobs nationally.

In his decision dated November 1, 2007, the A.L.J. found

that Plaintiff suffered from tarsal tunnel syndrome,

polyneuropathy due to diabetes mellitus, a right knee medial

meniscus tear and obesity, which are severe impairments, but

which alone, or in combination do not meet a listing.  The A.L.J.

further found that Plaintiff had the residual functional capacity

("RFC") to perform sedentary work

> except that the claimant would need simple, routine,
> unskilled jobs with low stress, concentration and

8

> memory due to his education and pain which would allow
> him to stand and sit for 20-30 minutes at a time on a
> continuous basis, 8 hours a day, 5 days a week; would
> require little interaction with the public, co-workers
> or supervisors; would allow for the avoidance of
> heights and hazardous machinery due to dizziness; would
> allow for no prolonged climbing, balancing, stooping or
> temperature and humidity extremes; would involve no
> repetitive use of the hands and would allow for an
> occasional opportunity to raise the feet at a minimal
> distance off the floor while working.

(Tr. 19). Based on this residual functional capacity, the A.L.J.
determined that Plaintiff could not perform his past relevant
work, but could perform the requirements of the "representative
occupation" of security monitor. (Tr. 27). Accordingly, the
A.L.J. concluded that Plaintiff was not under a disability within
the meaning of the Act.

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security
are conclusive, if they are supported by substantial evidence.
Accordingly, judicial review of the Commissioner's decision is
limited to determining whether "substantial evidence" supports
the decision. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185,
1190 (3d Cir. 1986). In making this determination, a reviewing
court may not undertake a de novo review of the Commissioner's
decision and may not re-weigh the evidence of record. Id. In
other words, even if the reviewing court would have decided the
case differently, the Commissioner's decision must be affirmed if
it is supported by substantial evidence. Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## DISCUSSION

### I.   Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

10

impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. §§ 404.1505, 416.905. In order to qualify for disability insurance benefits, the claimant must establish that he or she was disabled prior to the date he or she was last insured. 20 C.F.R. § 404.131, Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990). The claimant bears the initial burden of proving disability. 20 C.F.R. §§ 404.1512(a), 416.912(a); Podeworthy v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. §§ 404.1520, 416.920. In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity. In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds

11

to step three. In step three, the A.L.J. must compare the
medical evidence of the claimant's impairment with a list of
impairments presumed severe enough to preclude any substantial
gainful work. Id. at 428. If the claimant's impairment meets or
equals a listed impairment, the claimant is considered disabled.
If the claimant's impairment does not meet or equal a listed
impairment, the A.L.J.'s analysis proceeds to steps four and
five. Id.

In step four, the A.L.J. is required to consider whether the
claimant retains the residual functional capacity to perform his
or her past relevant work. Id. The claimant bears the burden of
establishing that he or she cannot return to his or her past
relevant work. Id.

In step five, the A.L.J. must consider whether the claimant
is capable of performing any other available work in the national
economy. At this stage the burden of production shifts to the
Commissioner, who must show that the claimant is capable of
performing other work if the claimant's disability claim is to be
denied. Id. Specifically, the A.L.J. must find that there are
other jobs existing in significant numbers in the national
economy, which the claimant can perform consistent with the
claimant's medical impairments, age, education, past work
experience and residual functional capacity. Id. In making this
determination, the A.L.J. must analyze the cumulative effect of

12

all of the claimant's impairments.  At this step, the A.L.J. often seeks the assistance of a vocational expert.  Id. at 428.

## II.  Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By his Motion, Plaintiff contends that the A.L.J.'s decision is not supported by substantial evidence.  Specifically, Plaintiff contends that the A.L.J. erred in substituting his own lay judgment for the unanimous opinions of all medical experts, including the state agency physicians.  Plaintiff contends that even under the A.L.J.'s hypothetical, the occupational base was so severely eroded, that a finding of disabled was required.

An A.L.J. is not permitted to substitute his lay judgment for the expertise of examining medical doctors.  Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352 (3d Cir. 2008); Facyson v. Barnhart, 94 Fed. Appx. 110, *3 (3d Cir. 2004).  Although the A.L.J. provided analysis for giving less than controlling weight to Dr. Menendez's opinion in this case and for declining to fully accept the state agency physicians' opinions, the Court concludes that the A.L.J. erred in failing to consult the medical sources to resolve conflicts in their opinions, and instead, improperly substituted his own opinion on certain medical issues that are not reserved to the Commissioner.  For example, the vocational expert testified that based on the opinions of the state agency physicians, Plaintiff would have "less than the full capacity to work because [he] can't complete a normal eight-hour workday."

13

(Tr. 412). Despite finding that the combined standing/walking and sitting limitations imposed by the state agency physicians would not allow for the completion of a full day of work, the state agency physicians still found that Plaintiff could perform sedentary work. The A.L.J. noted this inconsistency in his decision, yet failed to contact the state agency physicians to resolves this conflict as required by the regulations. 20 C.F.R. § 404.1512(e)(1). Defendant contends that the A.L.J. was not required to contact the State Agency physicians for clarification, because the evidence in the record was sufficient for the A.L.J. to determine whether Plaintiff was disabled. However, in declining to fully credit any medical opinions in the record and failing to resolve this conflict, it is evident to the Court that the A.L.J. was basing his decision on his lay interpretation of the medical records and Plaintiff's condition which is impermissible.[2] Brownawell, 554 F.3d at 356.

In light of the foregoing deficiencies, the Court cannot conclude that the A.L.J.'s decision is supported by substantial evidence. Because clarification of the record is required, the

---

[2]     By way of further example, the Court notes that in formulating his RFC, the A.L.J. determined that Plaintiff would only need to "occasionally raise the feet a minimal distance off the floor." (Tr. 19). While the A.L.J. has the responsibility for developing the RFC, it appears to the Court that the judgment of what level and frequency of foot elevation is required to accommodate Plaintiff's medical conditions is, at least to some extent, a medical judgment that requires at least some support in the record.

Court further concludes that a direct award of benefits is not appropriate at this juncture. Accordingly, the Court will reverse the decision of the Commissioner and remand this matter to the Administration to address the aforementioned deficiencies in the A.L.J.'s decision.

## CONCLUSION

For the reasons discussed, the Court will deny Defendant's Cross-Motion For Summary Judgment and grant Plaintiff's Motion For Summary Judgment. The decision of the Commissioner dated November 1, 2007, will be reversed and this matter remanded for further findings and/or proceedings consistent with this Memorandum Opinion.

An appropriate Order will be entered.